USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7|25|13

UNITED STATES OF AMERICA            :

        - against -            :            **OPINION**

NATHANIEL L. ORTIZ,            :            08 Cr. 548 (DC)
                                             11 Civ. 8387 (DC)
           Defendant.            :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**            PREET BHARARA, ESQ.
                            United States Attorney for the
                            Southern District of New York
                            By:  Todd Blanche, Esq.
                                 Michael Douglas Maimin, Esq.
                                 Assistant United States Attorneys
                            One Saint Andrew's Plaza
                            New York, New York  10007

                            NATHANIEL L. ORTIZ
                            Defendant Pro Se
                            DIN: 08A3227
                            Downstate Correctional Facility
                            121 Red Schoolhouse Road
                            P.O. Box F
                            Fishkill, New York  12524

**CHIN, Circuit Judge**

On June 5, 2009, a jury convicted defendant Nathaniel

L. Ortiz of conspiracy to distribute and to possess with intent

to distribute crack cocaine, in violation of 18 U.S.C. §§ 812

and 841(a)(1) and (b)(1)(A), and possession of a firearm in

furtherance of the drug conspiracy, in violation of 18 U.S.C.

§ 924(c)(1)(B)(ii) and (c)(2).  On October 28, 2009, I sentenced

Ortiz principally to a term of imprisonment of life.  On May 30,

2013, I reduced Ortiz's sentence to 360 months' imprisonment.

Before the Court is Ortiz's pro se motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the basis that (1) with its proof at trial the government constructively amended the superseding indictment; (2) I erred in admitting certain co-conspirator testimony; (3) I failed to require the jury to answer special interrogatories; and (4) the Second Circuit erred on direct appeal. For the reasons set forth below, the motion is denied.[1]

## BACKGROUND

### A. The Facts

From at least 2004 through 2008, Ortiz served as the leader of the Grand Concourse Crew, a crack-distribution organization centered at the 1269 Grand Concourse housing complex in the Bronx, New York. (PSR ¶ 24).[2] The organization

---

[1] Because I find that "it plainly appears from the face of the [section 2255] motion . . . and the prior proceedings in the case that [Ortiz] is not entitled to relief," I did not order the United States Attorney to file an answer to the instant motion. See Rules Governing Section 2255 Proceedings for the U.S. Dist. Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).

[2] References are as follows: "Ind't" to the grand jury indictment filed September 16, 2008; "Superseding Ind't" to the superseding indictment filed May 4, 2009; "Tr." to the transcript of Ortiz's retrial beginning May 26, 2009; "Verdict Form" to the undated verdict form given to the jury in Ortiz's retrial; "PSR" to the Presentence Investigation Report, dated August 10, 2009; "Sent. Tr." to the transcript of Ortiz's sentencing on October 28, 2009; "App. Br." to Ortiz's appellate brief to the Second Circuit, dated March 5, 2010; "Mot." to Ortiz's § 2255 motion, dated November 17, 2011; and "Mem. Dec." to my Memorandum Decision entered May 30, 2013.

sold "crack" cocaine twenty-four hours a day, seven days a week, in signature black plastic baggies representing the dark front gates of 1269 Grand Concourse. (Mem. Dec. at 2). Ortiz used apartments within the housing complex to store drugs and guns and hide from the police, and he recruited numerous children into the Grand Concourse Crew. (Sent. Tr. 33:6-14; Mem. Dec. at 2).

As the leader of the organization, Ortiz supplied his managers with crack. (Tr. 75, 136-37, 145-46). The managers distributed the crack to workers who, in turn, sold the crack and paid the managers from the proceeds. The managers were then responsible for remitting the money to Ortiz. (Tr. 102-03, 136-37, 661-64).

Beginning in early 2007, the Federal Bureau of Investigation and the New York City Police Department conducted an investigation during which they used confidential informants to purchase crack and guns from members of the Grand Concourse Crew. (Tr. 273-82, 299-301, 459-61, 472-80, 860). At trial, the government offered video recordings of various purchases of crack cocaine from members of the Grand Concourse Crew, including a video, corroborated by telephone records, of Jorge Marcial -- one of Ortiz's customers -- calling Ortiz to obtain a large order of crack cocaine. (Tr. 862-63, 911-22; see also Tr. 906 ("[In the video recording] [s]omeone asked the question,

-3-

who's that, Nat[haniel Ortiz], and then Marcial responds,
yeah.").

## B.  Prior Proceedings

### 1.  Indictment

Ortiz and fourteen codefendants were indicted on
September 16, 2008.  Count One charged the defendants with
conspiracy to distribute and possess with intent to distribute
crack cocaine, in violation of 18 U.S.C. §§ 812 and 841(a)(1)
and (b)(1)(A).  Count Two charged the defendants with possession
of a firearm in furtherance of the drug conspiracy, in violation
of 18 U.S.C. § 924(c)(1)(B)(ii) and (c)(2).  (Ind't ¶ 1-2).  The
indictment described the offenses as occurring "from at least in
or about 2007, up to and including in or about June 2008."
(Ind't ¶ 1).  All of the defendants pled guilty except Ortiz and
Jose Reyes.  (PSR ¶¶ 6, 8-22).

### 2.  Trial, Superseding Indictment and Retrial

The trial of the charges against Ortiz and Reyes began
on April 13, 2009.  On April 23, 2009, after the jury deadlocked
on both counts as to both Ortiz and Reyes, I declared a
mistrial.

On May 4, 2009, the government filed a superseding
indictment against Ortiz and Reyes.  The superseding indictment
asserted the same two counts but it broadened the timeframe of
the conspiracy, charging Ortiz with involvement in a conspiracy

running "from at least in or about 2004, up to and including in or about June 2008." (Compare Superseding Ind't ¶ 1, with Ind't ¶ 1).

The second trial commenced on May 26, 2009. The government called sixteen witnesses, including four cooperating witnesses. All the cooperating witnesses testified that Ortiz was the leader of the Grand Concourse Crew and identified several other members of his crew. (Tr. 75-76, 93-108, 119, 315-16, 515-19, 653-58).

Of particular relevance to Ortiz's present motion, on May 27, 2009, the government's first cooperating witness, Jonathon Santiago, took the stand. (Tr. 74-260). Santiago was thirteen when he first met Ortiz. In 2007, when he was approximately sixteen, he started selling crack for Ortiz. (Tr. 119, 127, 135). Santiago identified some of Ortiz's workers including Javier, "a regular worker," who started selling crack for Ortiz in 2003. (Tr. 108). Santiago testified that Javier told him that he got his crack cocaine from Ortiz. (Tr. 114-15). According to Santiago's testimony, Javier stopped selling Ortiz's crack before 2007 because "he was deported." (Tr. 108).

On June 5, 2009, the jury convicted Ortiz on both counts and Reyes on Count One. Ortiz moved, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, for a judgment of acquittal. I denied the motion in a written decision filed

on October 23, 2009.  See United States v. Ortiz, 666 F. Supp.
2d 399, 406 (S.D.N.Y. 2009).

### 3.  **Sentencing Hearing**

On October 28, 2009, Ortiz appeared for sentencing.
He submitted a sentencing letter arguing that the 18 U.S.C.
§ 3553(a) factors supported a 240-month sentence because (1) he
had never been imprisoned for a significant term before; (2) he
was a loving and supportive family member, capable of learning
from his mistakes; (3) the low sentences imposed on his co-
defendants justified at most a 20-year sentence for him; and (4)
the Guidelines range in this case was unreasonable.  (App. Br.
20).

The Guidelines calculation was based, in part, on a
finding that Ortiz was responsible for 4.5 kilograms or more of
crack cocaine.  (PSR ¶ 64).  Under the then-applicable
Guidelines, his base offense level was 38.  See United States
Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(1) (2008) (base
offense level of 38 for 4.5 kilograms or more of cocaine base).
(PSR § 64; Sent. Tr. 24:20-21).  I applied a four-level
enhancement for a leadership role and a two-level enhancement
for involving minors, resulting in an adjusted offense level of
44.  (PSR ¶¶ 67, 69, 74).  His criminal history category was IV;
hence, the applicable Guidelines range was life imprisonment.
(Id. ¶¶ 89, 132).  I sentenced Ortiz principally to a term of

life imprisonment on the drug conspiracy charge and zero months' imprisonment on the gun charge. (Sent. Tr. 35:5-7).

### 4. Direct Appeal

On November 18, 2009, Ortiz appealed his sentence and conviction to the Second Circuit. Ortiz argued that (1) the evidence was insufficient to prove the charged conspiracy in 2004, 2005, and 2006; (2) I had erred by admitting into evidence certain hearsay statements; and (3) his sentence was substantively unreasonable. See United States v. Ortiz, 394 F. App'x 722, 724 (2d Cir. 2010) (summary order). The Second Circuit, however, rejected each of these arguments and affirmed both the sentence and the conviction. Id. at 726.

On February 10, 2011, Ortiz filed a petition for a writ of certiorari to the United States Supreme Court. The petition was denied on March 21, 2011. See Ortiz v. United States, 131 S. Ct. 1705 (2011).

### 5. Post-Appeal Motions

On November 17, 2011, proceeding pro se, Ortiz filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[3]

---

[3]    "A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation that generally runs from the date on which the judgment of conviction becomes final." Clay v. United States, 537 U.S. 522, 524 (2003) (quoting 28 U.S.C. § 2255) (internal quotation marks omitted). Here, the motion was filed within one

On April 16, 2012, following the amendment to the crack sentencing guidelines, Ortiz moved pursuant to 18 U.S.C. § 3582(c)(2) for resentencing under the Fair Sentencing Act of 2010 (the "FSA"). See Pub. L. No. 111-220, 124 Stat. 2372. Ortiz asked that I reduce his life sentence to 360 months' imprisonment and that the sentence, which was to be served consecutively to a state court sentence he was then serving, run concurrently with his state court sentence.

I held Ortiz's § 2255 motion pending resolution of the § 3582(c) motion. On May 30, 2013, I granted the motion for a reduction and reduced Ortiz's sentence to 360 months. I denied his request for concurrent sentences. (Mem. Dec. at 7). I now consider the § 2255 motion.

## DISCUSSION

Ortiz argues that (1) the government, by introducing at trial evidence of powder cocaine sales, constructively amended the superseding indictment to include a powder cocaine conspiracy charge; (2) I erroneously admitted Santiago's testimony because it was hearsay and "unreliable"; (3) I erred by declining to provide the jury with special interrogatories asking it to identify what years the conspiracy was in existence; and (4) the Second Circuit erred on direct appeal.

---

year after the conviction became final and therefore was timely. See 28 U.S.C. § 2255(f).

His claims are barred procedurally in part and all four claims fail on the merits.

## I. Procedural Bar

Ortiz is procedurally barred from making his first and third arguments and the argument that Santiago's testimony was "unreliable" in his second argument because he failed to raise the issues in his direct appeal.

### A. Applicable Law

A district court lacks jurisdiction to consider a § 2255 claim alleging a constitutional error unless that issue was first raised on direct appeal. See Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992). Where a defendant fails to raise an alleged constitutional violation on direct appeal, he may not raise such a claim on collateral review unless he can show (1) "cause" for his failure to raise the claim on appeal; and (2) actual "prejudice" due to the alleged violation. See Reed v. Farley, 512 U.S. 339, 354 (1994). The good cause prong requires the movant to show that something "external to the petitioner, something that cannot fairly be attributed to him," resulted in his failure to raise a claim on direct appeal. Coleman v. Thompson, 501 U.S. 722, 753 (1991).

### B. Application

Three of Ortiz's arguments -- that (1) his superseding indictment was constructively amended; (2) Santiago's testimony

was "unreliable" because he was young and had consumed marijuana at the time; and (3) I erred by not instructing the jury to determine what years the conspiracy was in existence -- could have been, but were not, raised on direct appeal. Ortiz does not offer any explanation for his failure to raise these claims and thus he is barred from asserting them now.

## II. **Merits**

Even assuming there is no procedural bar, all of Ortiz's claims must be denied on the merits.

### A. **Constructive Amendment**

Ortiz argues that his superseding indictment was constructively amended by the proof at trial because the government allegedly introduced evidence of a powder cocaine conspiracy whereas the superseding indictment only charged him with a crack cocaine conspiracy.[4] For the reasons set forth below, I reject this argument.

#### 1. **Applicable Law**

An indictment has been constructively amended when "the proof at trial established a basis for conviction that was broader than the basis stated in the indictment." United States v. Zingaro, 858 F.2d 94, 99 (2d Cir. 1988) (citing United States v. Miller, 471 U.S. 130, 138-40 (1985)). "To prevail on a

---

[4] Ortiz did not object to this evidence at trial and therefore it is also barred on the merits. See McLean v. Conway, No. 06 Civ. 0807(AJP), 2006 WL 2405067, at *17 (S.D.N.Y. Aug. 21, 2006).

constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted" of the charge in the grand jury's indictment. United States v. Frank, 156 F.3d 332, 337 (2d Cir. 1998). A constructive amendment is a per se violation of the Fifth Amendment and requires reversal. Zingaro, 858 F.2d at 98.

## 2. Application

Ortiz argues that the government's proof at trial constructively amended the superseding indictment. He argues that because the government introduced evidence of a powder cocaine conspiracy, but the superseding indictment only charged him with a crack cocaine conspiracy, his superseding indictment was constructively amended in violation of the Fifth Amendment. These arguments are without merit.

Ortiz contends that the government's direct examination of one witness, William Anthony Velasquez, constructively amended the superseding indictment because the witness admitted to selling powder cocaine for Ortiz:

> GOVERNMENT: [D]id you also sell any other drugs to the organization?
>
> VELASQUEZ: Yes. I've sold powder cocaine.
>
> GOVERNMENT: Who did you sell that for?

> VELASQUEZ: I sold that for Nat[haniel
> Ortiz].

(See Tr. 675). This testimony did not, however, "'so alter[] an essential element of the charge that . . . it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment.'" United States v. Rigas, 490 F.3d 208, 227 (2d Cir. 2007) (quoting United States v. Salmonese, 352 F.3d 608, 620 (2d Cir. 2003)). The government presented sixteen witnesses -- including Velasquez -- who testified about Ortiz's involvement in a crack cocaine conspiracy. (See, e.g., Tr. 640 ("GOVERNMENT: Looking around this courtroom today do you see anybody with whom you sold crack? VELASQUEZ: Yes . . . . I see Nat[haniel Ortiz]."). Ortiz was clearly convicted of conspiring to distribute and to possess with intent to distribute crack cocaine. See Salmonese, 352 F.3d at 620-22 (no constructive amendment where "core criminality" in fraud conspiracy case was selling stripped warrants and the government offered proof of unalleged sales); United States v. Danielson, 199 F.3d 666, 669 (2d Cir. 1999) (no constructive amendment in firearm possession charge case where government offered proof that shells, rather than entire rounds as charged in the indictment, had traveled in interstate commerce). Velasquez's passing reference to powder cocaine sales did not change the core criminality of the charged conduct.

Ortiz argues that the jury was given copies of the charge that erroneously stated that the charged conspiracy was one to distribute or possess "cocaine" when the charge should have stated "crack cocaine." This is true. But I corrected the error. First, I correctly instructed the jury that "the object of the conspiracy in Count One is the distribution or possession of cocaine base in a form commonly known as crack with the intent to distribute it." (See Tr. at 1134, 1170-71 (noting that I said "crack cocaine"). Second, following the charge, defense counsel pointed out that the copies of the jury charge given to the jurors incorrectly referred to a cocaine conspiracy (Tr. 1170-71), rather than a crack cocaine conspiracy. I promptly corrected this error. (See Tr. 1173 ("Ladies and gentlemen . . . Page 14, at the bottom of the page, where it says the agreement to distribute cocaine or possess cocaine, please insert the word crack, to distribute crack cocaine or possess crack cocaine.")). There is no chance that the jury was confused. See United States v. Jones, 16 F.3d 487, 493 (2d Cir. 1994) ("[J]urors are presumed to follow instructions from the court.").

Additionally, because every question on the verdict sheet referred only to crack cocaine, and never to powder cocaine, the jury could not have been confused about the question it was being asked to decide. (See Verdict Form; see

also Tr. 1063 ("GOVERNMENT [Summation]: [The evidence] clearly demonstrates beyond a reasonable doubt that Nate [was a member] of this crack conspiracy at 1269 Grand Concourse and that Nate supplied guns to that conspiracy in order to keep that conspiracy safe.").

Accordingly, the motion is denied in this respect.

## B. Testimony of Jonathon Santiago

Ortiz makes two arguments regarding Santiago's testimony: (1) Santiago's testimony about his conversation with Javier was inadmissible hearsay; and (2) Santiago lacked foundation and perception for his testimony. For the reasons set forth below, both arguments fail.

### 1. Hearsay

#### a. Applicable Law

Hearsay is "an out-of-court statement presented for the truth of the matter stated." Dutton v. Evans, 400 U.S. 74, 105 n.7 (1970). "The hearsay rule, Fed. R. Evid. 802, is premised on the theory that out-of-court statements are subject to particular hazards." Williamson v. United States, 512 U.S. 594, 598 (1994). For example, "[t]he declarant might be lying; he might have misperceived the events which he relates; he might have a faulty memory; [or] his words might be misunderstood or taken out of context by the listener." Id.

Certain out-of-court statements are less susceptible to these hazards and therefore exempt from the general rule that hearsay is inadmissible. Id. For example, a statement against one's penal interest is not excluded by the hearsay rule, when the declarant is unavailable at trial.[5] See Fed. R. Evid. 804(b)(3)(B) (if declarant is unavailable as witness, "[a] statement that is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability," is not excluded by hearsay rule).

A declarant is considered unavailable if he "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance or testimony." Fed. R. Evid. 804(a)(5)(B).

### b. Application

Ortiz argues that Santiago's testimony about his conversation with Javier was hearsay and should not have been admitted.[6] Santiago testified that Javier had told Santiago that

---

[5] Because "reasonable people . . . tend not to make self-inculpatory statements unless they believe them to be true," Williamson v. United States, 512 U.S. 594, 599 (1994), self-inculpatory statements have a higher likelihood of truthfulness.

[6] Ortiz raised this argument in his direct appeal to the Second Circuit. The Second Circuit, however, never reached the merits of this argument. See United States v. Ortiz, 394 F.

-15-

he was waiting for Ortiz to bring him drugs. (Tr. 109). In response to Ortiz's objection at trial, I determined that Javier was unavailable and permitted Santiago to testify about what Javier had told him under the statement against penal interest exception to the hearsay rule. See Fed. R. Evid. 804(b)(3)(B). (See also Tr. 118 ("The declarant, Javier, is unavailable. The witness testified that Javier was deported at the time. At the time that Javier made the statement [to Santiago], [it was] against Javier's interest as it tended to subject [] him to criminal liability.")).

First, as a factual matter, Ortiz has failed to show that my finding that Javier was not in the United States was clearly erroneous. See Amadeo v. Zant, 486 U.S. 214, 223 (1988) (a trial court's findings of fact will be set aside only if they are "clearly erroneous"); see also United States v. Dovico, 261 F. Supp. 862, 869 (S.D.N.Y. 1966) ("Whether the [declaration against interest exception] is satisfied so that the declaration is admissible as a matter of law is preliminarily a question of fact for the Court."). He does not suggest that Javier had not been deported or was otherwise present in the United States. Ortiz also argues that Javier "was not proven unavailable by any sufficient good faith effort." (Mot. at 48-49). This argument

_____

App'x 722, 725 (2d Cir. 2010) ("In light of the discussion above, we need not determine whether the district court abused its discretion in admitting certain hearsay statements from an unavailable witness.").

fails. There was a sidebar. I excused the jury for further questioning of Santiago, and I found, based on his testimony, that Javier was unavailable, and that, because this was a statement against his penal interest, the statement was admissible. (Tr. 118).

Second, even if Javier actually was available at the time, it is highly unlikely that he would have testified. The statement was clearly against his penal interest. See United States v. Lieberman, 637 F.2d 95, 103 (2d Cir. 1980) (finding defendant's statement that "he had packed the dishpacks [with marijuana] was clearly self-incriminating" and weighed in favor of admitting testimony). Javier's statement implicated him in a narcotics conspiracy with Ortiz. (See Tr. 116 ("It's clear from the context of what he just testified about . . . that Javier was talking about drugs, which makes it a statement against his interest.")).

Third, although the Second Circuit never reached the merits of this argument, it noted that any error would be harmless because of the overwhelming evidence of the crack conspiracy for 2007 and 2008. See Ortiz, 394 F. App'x at 725.

Accordingly, the motion is denied in this respect.

## 2. Foundation and Perception

### a. Applicable Law

Rule 602 of the Federal Rules of Evidence provides, in relevant part:  "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602; see also Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 764 (2d Cir. 1991) (witness has personal knowledge if he testified from "general observation and knowledge, and not upon conjecture or hearsay").  Whether a witness is competent to testify is a question for the trial judge.  See United States v. Roman, 884 F. Supp. 126, 127 (S.D.N.Y. 1995); see also Fed. R. Evid. 601 ("Every person is competent to be a witness except as otherwise provided in these rules.").

Rule 701(a) of the Federal Rules of Evidence provides that a lay witness may only offer opinions that are "rationally based on [his] perception."  Fed. R. Evid. 701(a).  "The rational-basis requirement 'is the familiar requirement of first-hand knowledge or observation.'"  United States v. Rea, 958 F.2d 1206, 1215 (2d Cir. 1992) (quoting Fed. R. Evid. 701 Advisory Committee Note on the 1972 proposed rules).

### b. Application

Ortiz argues that Santiago's testimony regarding his conversation with Javier was not admissible because (1) Santiago

lacked foundation and personal knowledge to make the statement;
and (2) certain factors, such as Santiago's age and his use of
marijuana, affected his "perception," as defined in Rule 701 of
the Federal Rules of Evidence. Ortiz argues that Santiago's
"sensory perceptions, reasonably distorted from the daily
consumptions of marijuana, at thirteen years of age," affected
the credibility of his testimony regarding Javier's involvement
in the conspiracy. (Mot. at 47). The arguments fail.

Outside the presence of the jury, I found that
although "[Santiago] was equivocal at times," he was competent
to testify. (Tr. 118). Ortiz has not shown that this finding
was clearly erroneous. See Wheeler v. United States, 159 U.S.
523, 524-25 (1895) ("The decision of th[e] question [of whether
a very young boy has sufficient intelligence to be competent as
a witness] rests primarily with the trial judge" and "will not
be disturbed on review, unless . . . it is clear that it was
erroneous."); see also Tromello v. DiBuono, 132 F. Supp. 2d 82,
85 (E.D.N.Y. 2000) ("Even a person who has indisputably been
determined to be insane, and to be suffering from 'visual and
auditory hallucinations with marked memory defect,' is not
necessarily incompetent to testify." (quoting People v. Rensing,
14 N.Y.2d 210, 213-14 (1964)).

To the extent that Ortiz relies on Rule 701, and not
Rules 601 and 602, the argument also fails. As Santiago was

testifying to facts (see Tr. 112-15), and not offering any opinion, Rule 701 does not apply. See Fed. R. Evid. 701(a) ("[T]estimony in the form of an opinion is limited to one that is rationally based on the witness's perception." (emphasis added)). Additionally, as the Second Circuit noted, any error in admitting the testimony would have been harmless. See Ortiz, 394 F. App'x at 725 ("[W]e need not determine whether the district court abused its discretion in admitting certain [] statements from an unavailable witness. Such an error would be harmless in light of the overwhelming evidence for 2007 and 2008.").

Accordingly, the motion is denied in this respect.

## C.    Special Interrogatories

Ortiz contends that I erred by failing to give the jury special interrogatories. The argument is rejected.

### 1.    Applicable Law

A trial court may request from a jury a general verdict accompanied by answers to interrogatories. See Fed. R. Civ. P. 49(b); see also United States v. Wilson, 629 F.2d 439, 442-43 (6th Cir. 1980) (noting that, although they are permitted, the Federal Rules of Criminal Procedure do not make a provision for special interrogatories). Interrogatories are "written findings of fact." Lavoie v. Pac. Press & Shear Co., 975 F.2d 48, 53 (2d Cir. 1992). "Under Rule 49(b), the jury[,]

after being fully instructed[,] answers the interrogatories, renders a general verdict and the trial court enters judgment on the jury's verdict." Id. Whether to use special interrogatories lies in the broad discretion of the district court. See United States v. Ogando, 968 F.2d 146, 149 (2d Cir. 1992) (affirming trial judge's decision to not use special interrogatories in criminal case); see also United States v. Boonphakdee, 40 F.3d 538, 542-43 (2d Cir. 2004) (no abuse of discretion in conspiracy case where the district judge refused to submit special interrogatories concerning quantity of heroin).

## 2. Application

At trial, Ortiz requested that I submit special interrogatories to the jury to determine the specific years, from 2004 to 2008, during which the crack conspiracy was in existence. (Tr. 1205). This request, however, came after the jury was ready to announce its verdict. (Id.).

The request came too late. In United States v. Aiello, 864 F.2d 257 (2d Cir. 1988), the Second Circuit held that the district court did not abuse its discretion in denying defendant's request for special interrogatories where the request was made after the jury had been deliberating for four hours. Id. at 264-65. Here, the jury had already announced that it had reached a verdict, and it did so after six hours of

deliberations. (Tr. 1205). In light of the timing of his request, Ortiz has failed to show that I abused my discretion when I denied his request for special interrogatories. See Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (the district court's application of legal standards to the facts of a case is reviewed only for abuse of discretion).

Additionally, to the extent that Ortiz argues that there was a substantial variance between the dates of the conspiracy alleged in the indictment and the proof adduced at trial, this argument fails. The Second Circuit already determined that sufficient evidence supported the jury's finding that defendant was a member of the conspiracy from 2004 to 2008. Ortiz, 394 F. App'x at 725 (noting that "an array of circumstantial evidence" was "sufficient for a rational jury to infer [Ortiz's] continued participation, dating back to 2004").

Accordingly, the motion is denied in this respect.

D.    **Error on Appeal**

Finally, Ortiz argues that, on direct appeal, the Second Circuit failed to give his arguments a "full, complete and meaningful review." (Mot. at 71). In my role as a district court judge, I cannot review the decision of the Court of Appeals. See Ahcom Ltd. V. Bond Commodities Ltd., No. 09 Civ. 8276, 2010 WL 445195, at *1 (S.D.N.Y. Feb. 8, 2010) ("[S.D.N.Y.] is bound by Second Circuit.").

Accordingly, the motion is denied in this respect.

## CONCLUSION

For the reasons set forth above, Ortiz has failed to show a basis for relief under 28 U.S.C. § 2255. Accordingly, his petition for relief is denied. Because he has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253 (1996) (as amended by the Antiterrorism and Effective Death Penalty Act). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this order would not be taken in good faith.

SO ORDERED.

Dated:  New York, New York
        July 25, 2013

DENNY CHIN
United States Circuit Judge
Sitting by Designation